## LANE *et al.* v. MALCOLM.

1. This language contained in a will: "It is my will . . **that all . . .** of my property . . be given to my wife, to be used . . by her during her natural life . . that one half of my property . . shall belong to my wife in fee simple, to be disposed of by her at her death as she may think proper," gave to the devisee an estate for life in an undivided half interest in the property and an absolute estate in fee simple in the other half undivided interest therein.

2. The conveyance by a tenant in common of a portion of the common estate by metes and bounds will be given effect as against the grantor and his privies, so far as it may be done consistently with the preservation of the full rights of the other tenants in common.

3. The evidence objected to, even if inadmissible for the reasons assigned, was not of sufficient materiality to make it ground for the grant of a new trial.

FEBRUARY 26, 1914.

Equitable petition. Before Judge Brand. Walton superior court. August 20, 1912.

A petition was brought by G. M. Lane and others, being all of the children of Judith Lane, to recover from the defendant, W. H. Malcolm, certain described lands alleged to have been devised to petitioners by the will of Mrs. Virtuous Hardman, and to have the title to said lands decreed to be in petitioners. They pray, if the defendant claims to hold under any instrument of writing not signed by them, that such instrument or conveyance, in so far as it undertakes in any way to transmit their title, be declared null and void and be delivered up and canceled; and that the lands be sold and the proceeds thereof be divided among petitioners in accordance with the terms of the will of Mrs. Virtuous Hardman, she having formerly been the wife of Henry Butler, and the lands now in controversy being a part of the lands devised under the will of Henry Butler. So much of the will of Henry Butler as is material to the issues is as follows: "Item 9th. It is my will, after the payment of my just debts, that all the balance of my property both real and personal, of every description whatever, shall be given to my wife, to be used and enjoyed by her during her natural life. It is my will that one half of my property left after the payment of my just debts shall belong to my wife in fee simple, to be disposed of by her at her death as she may think proper. After the death of my said wife the other half of said property to be divided equally between the children of my brother and sisters per capita, except that I will and bequeath to a deaf and dumb child of my sister, Milly Adams, $1,000, to be first paid out of the balance of my estate at the death of my said wife. If said deaf and dumb child shall be dead at the time [death] of my wife, then said $1,000 to go to his mother, Milly Adams, which is to be for the separate and special use of said Milly Adams, free from the control of her present or any future husband or his debts. After the payment of said $1,000 as aforesaid, then the balance of the half of my estate to be divided equally among the children of my brother and sisters."

Henry Butler died in the year 1858, leaving his wife, Mrs. Virtuous Butler, who afterwards intermarried with John G. Malcolm,

the father of the defendant, and after his death she became the wife of William Hardman. During her life, as Mrs. Virtuous Malcolm, she deeded to. W. H. Malcolm 50 acres of the land devised by Henry Butler, and subsequently, as Mrs. Virtuous Hardman, she executed to said Malcolm (the defendant) a warranty deed to 200 acres, describing it by metes and bounds, it being also a part of the 500 acres devised by Henry Butler. Afterward she executed her last will and testament, in which she devised her half undivided interest in the 500-acre tract of land to Judith Lane and her children, making provisions therein for the delivery to each of the legatees of their respective shares as each became of age. These legatees are the plaintiffs, who contend that Mrs. Virtuous Hardman did not have an absolute estate in any part of the 500 acres which she could convey in fee simple; and again, that if she had an interest which she could so convey, inasmuch as relatively to the fee-simple estate in the 500 acres she was only a tenant in common, she could not convey any distinct part thereof by metes and bounds, but could only have conveyed some undivided interest, and that her deeds conveying by metes and bounds were inoperative.

After the conclusion of the evidence the court directed a verdict for the defendant, and the plaintiffs excepted.

*A. C. Stone* and *R. L. Cox,* for plaintiffs.

*F. C. Foster,* for defendant.

BECK, J. (After stating the foregoing facts.)

1. Under the item of the will of Henry Butler, which is set forth in the statement of facts, his widow had a fee-simple title to a undivided half interest in the estate of the testator and an estate for life in the remainder. The language, "It is my will that one half of my property . .. shall belong to my wife in fee simple," created a fee-simple estate. "The word 'heirs' or its equivalent is not necessary to create an absolute estate; but every conveyance, properly executed, shall be construed to convey the fee, unless a less estate is mentioned and limited in such conveyance." Civil Code, § 3659. The words that follow those just quoted in the will, "and to be disposed of by her at her death as she may think proper," did not diminish the quantity of interest which the devisee took in the property, and was not a limitation creating a less estate than that which the words first quoted import.

2. The undivided half interest in the property which the de-

visee named took under the will was an absolute estate which the devisee could have conveyed by deed or disposed of by will. Under proper proceedings she might have had the land partitioned so as to set apart to her in severalty such a part of the land as would have been a fair and just division between herself and any third party, had such third party been a life-tenant with her under the will and entitled to the life-estate in a one-half undivided interest in the property. However, she did not have the land thus partitioned, and in the year 1871 she deeded 50 acres of the land devised in the will of 'Henry Butler, which consisted of 500 acres, to the defendant in this case, of which 50 acres he immediately took possession; and subsequently, in November, 1887, she executed a warranty deed to 200 acres of the 500-acre tract, describing the 200 acres conveyed in the deed last referred to by metes and bounds. It is contended by the plaintiffs that inasmuch as the grantor in this last deed, even under the construction of the devise in the will of Henry Butler which we have given above, had only an undivided half interest in the 500-acre tract, this deed conveying 200 acres by metes and bounds was inoperative to convey any interest except the estate for life. We can not agree with this contention. Relatively to the fee in the entire tract of 500 acres of land, Mrs. Virtuous M. Butler (afterwards Virtuous M. Malcolm, later Virtuous Hardman) was only a tenant in common with the remaindermen, who were to take after her death an undivided half interest in the 500-acre tract. But the deed of a tenant in common, conveying by metes and bounds, is not void and inoperative, and is not voidable except at the instance of a cotenant. The grantee of the conveying tenant in common took an interest in the land, and the deed conveying by metes and bounds was good as against the grantor and her privies, and against all the world except the tenants in common with the grantor. The tenants in common in this case, the remaindermen, might have conveyed to Mrs. Virtuous Malcolm the 200 acres of land described in her deed to W. H. Malcolm, the defendant, and that would have confirmed the deed from Virtuous M. to W. H. Malcolm. And when they, subsequently to the death of Virtuous M., who had again married and became Virtuous Hardman, had a partition of the 500-acre tract of land and recognized the conveyance by Virtuous Malcolm to W. H. Malcolm, according to the partition made which set apart to him the land

deeded to him by Virtuous Hardman, this operated as a confirmation of that deed and gave him a good title to the land thus set apart in the partition proceedings and previously conveyed to him by the deed of Mrs. Virtuous Malcolm. The fact that the partitioners separated 80 acres from the 200 acres of land conveyed in the deed from Mrs. Virtuous M. Hardman to W. H. Malcolm, and substituted therefor another tract substantially equal in acreage, which they assigned to W. H. Malcolm in lieu of the 80 acres which they cut off from his 200-tract under the deed of Mrs. Virtuous Hardman, the cotenants, who as remaindermen took an undivided half interest in the 500-acre tract, not objecting thereto, affords a ground of complaint to no one else, in the absence of a charge of fraud and collusion between W. H. Malcolm and the other cotenants. Mrs. Virtuous Malcolm had, by the deed conveying 50 acres and by the deed conveying 200 acres by metes and bounds, conveyed in fee simple to W. H. Malcolm one half of the 500-acre tract of land. In the absence of a charge and proof that this was less than one half according to value of her undivided interest in the 500 acres of land, the plaintiffs, to whom had been devised the undivided interest of Mrs. Virtuous Hardman, show no right whatever to any part of the land or interest therein which could be set apart and assigned to them. Soutter v. Porter, 27 Me. 405; Varnum v. Abbot, 12 Mass. 474 (7 Am. D. 87); Whitton v. Whitton, 38 N. H. 127 (75 Am. D. 163); McKey's Heirs v. Welch's Exx., 22 Tex. 390; Wade v. Boyd, 24 Tex. Civ. App. 492 (60 S. W. 360); Furrh v. Winston, 66 Tex. 521 (1 S. W. 527).

What we have said disposes of the controlling question in the case. The evidence objected to, even if inadmissible for the reasons assigned, was not of sufficient materiality to make it ground for the grant of a new trial. The fact of the execution of the deeds was proved by uncontradicted evidence, and the question in the case was whether the deeds by a cotenant conveying by metes and bounds were operative; and having held that they were, the circumstances under which the deeds were executed and the conversations as to the motive of the grantor in making them were immaterial.

*Judgment affirmed. All the Justices concur.*